863 So.2d 520 (2004)
STATE of Louisiana
v.
Spencer MORGAN.
No. 2002-K-3196.
Supreme Court of Louisiana.
January 21, 2004.
Charles C. Foti, Jr., Attorney General, Eddie J. Jordan, Jr., District Attorney, Valentin Michael Solino, Catherine Lynn Bartholomew, Assistant District Attorneys, for applicant.
Paul Corey Marx, for respondent.
PER CURIAM.
The present case involves an incident in March, 1997, in which defendant-respondent lured his teenage daughter (L.C.) to his home, locked the doors behind them, and then raped her vaginally and attempted to rape her anally. The victim escaped after the sexual assault and ran to the home of her aunt where she reported the crime. Charged by the state with aggravated rape in violation of La.R.S. 14:42, respondent waived a jury and went to trial before the court alone on a dual plea of not guilty and not guilty by reason of insanity. At trial, the state presented testimony from not only the victim but also from another female witness (K.B.), who testified that six years before the charged crime, when she was 13 years old, respondent had also lured her to his house, pulled her inside as he locked the doors behind her, and then raped her. At the close of evidence, the trial court rejected respondent's insanity defense and found him guilty as charged.
*521 On appeal, respondent argued, inter alia, that the trial court erred in admitting evidence of the sexual assault involving K.B. The court of appeal rejected all of respondent's assignments of error and affirmed his conviction and sentence. In pertinent part, the court found that "evidence of the prior rape [of K.B.] was relevant to prove defendant's lustful disposition for minor, adolescent females." State v. Morgan, 99-2685, p. 16 (La.App. 4 th Cir. 1/17/01), 779 So.2d 17, 26. On respondent's application for review, this Court remanded the case to the court of appeal "for consideration in light of State v. Kennedy, 00-1554 (La.4/3/01), 803 So.2d 916." State v. Morgan, 01-0418 (La.1/25/02), 806 So.2d 662. On remand, the court of appeal reversed itself, vacated respondent's conviction and sentence, and sent the case back to the district court for further proceedings. State v. Morgan, 99-2685 (La. App. 4th Cir.5/29/02), 830 So.2d 304. With considerable reluctance and "great trepidation," the court of appeal concluded that this Court's decision in Kennedy meant that "the trial judge erred in allowing the victim of a prior crime to testify against defendant as evidence of `lustful disposition.'" Morgan, 99-2685 at 5, 830 So.2d at 307.[1] We then granted the state's application for review, not because the court of appeal erred in concluding that under Kennedy the sexual assault on K.B. was not admissible to prove respondent's lustful disposition towards children[2] but because *522 our independent review of the record reveals that the evidence was nevertheless relevant to the defense of insanity advanced by respondent and was therefore properly admitted by the court at trial.
In the present case, and unlike the case in Kennedy, respondent presented evidence, both lay and expert, to show that, as the result of moderate to severe mental retardation and paranoid schizophrenia, he had been legally insane at the time of the offense, i.e., incapable of distinguishing right from wrong when he sexually abused his daughter, an act which he also denied took place and which the law entitled him to deny even while pleading insanity. State v. Branch, 99-1484, p. 2 (La.3/17/00), 759 So.2d 31, 32 ("A defendant asserting that he or she was insane at the time of the offense may ... urge at trial all other defenses available under the law."). In particular, psychologist Dr. Marc Zimmerman testified that based on his interview with respondent following his arrest for the rape of L.C., the results of several standardized tests he administered to respondent, and his review of medical records from Central City Mental Health Clinic, Orleans Parish Prison, Charity Hospital, and East Feliciana Forensic Facility, respondent has an I.Q. of less than 50 and is therefore mentally retarded. In the doctor's opinion, based on records which "are just full of references to his lowered mental abilities and his psychotic state," respondent also suffers from paranoid schizophrenia and a schizo affective disorder. As the result of the mental disorders, exacerbated by mental retardation, respondent, in Dr. Zimmerman's opinion, functions at the level of a four- to six-year-old child who lacks the capacity to understand that rape is wrong and who cannot, when unmedicated and in a psychotic state, maintain contact with reality and with a sense of right and wrong.
Dr. Zimmerman's testimony received considerable support from the records of East Feliciana Forensic Hospital, where respondent had spent several months under a court commitment in connection with the 1991 prosecution for the rape of K.B.[3] The personnel at the forensic facility diagnosed respondent as a paranoid schizophrenic, with a learning disability reflecting an I.Q. of "somewhere below 50." The facility's test results accorded with Zimmerman's and placed respondent at the level of moderate mental retardation. See American Psychiatric Association, Diagnostic and Statistical Manual, p. 42 (4th ed. 2002)(I.Q. for moderate mental retardation ranges between 35-40 to 50-55). In addition, the records from Orleans Parish Prison confirmed that respondent had been diagnosed as psychotic and treated with anti-psychotic medication. "Regardless of what he did at that particular time (in 1991)," Dr. Zimmerman testified, "he still has this long history of psychosis, he has this long history of being diagnosed as retarded. That's not going to change."[4]
*523 However, the record shows that Dr. Zimmerman had considerable difficulty in answering a question posed not by the state but by the trial court, sitting as the trier of fact in the case, based on the circumstances of the charged crime. According to L.C., the defendant had called her over to his home, and, once she was inside, locked a large iron outer door, a regular wooden door behind it, then locked the barred windows, and then grabbed her, beginning a struggle that went through the kitchen, where he picked up a knife and pressed it to her neck, and into the bedroom, where he then raped her vaginally and attempted to rape her anally. When asked by the court for an opinion on whether respondent's securing of his residence, literally barring all means of entry or exit, before he assaulted his daughter indicated an awareness that what he was doing was wrong, Dr. Zimmerman initially replied that he did not think "locking the door would indicate that [he] knew the difference between right and wrong...." Pressed by the court to explain why respondent did not simply act on his sexual urges "right there on the spot, as opposed to knowing to seek out a place or hide, or close the door, or ... lock the door," the psychologist distinguished between respondent's understanding that certain conduct would lead to punishment and a moral awareness of right and wrong:
The Court: But even retarded people can understand right from wrong?
Dr. Zimmerman: It depends on the level of retardation.
The Court: We are at the level of retardation of Mr. Morgan. Could he understand right from wrong?
Dr. Zimmerman: I think he does not understand the concept of right from wrong. He understands what he'll be punished for.
The Court: So, then, it's your testimony that he could have been doing something, believing he would be punished for it, but not understanding that it was wrong?
Dr. Zimmerman: Yes, ma'am.
Although surely not intended to do so, Dr. Zimmerman's attempts to answer the trial court's question rendered the prior crime involving K.B. relevant to the defense of insanity advanced at trial. This Court has not often addressed the question of whether other crimes evidence may play a legitimate role in rebutting an insanity defense. However, in State v. Abercrombie, 375 So.2d 1170 (La.1979), a case in which the defendant was convicted and sentenced for the second degree murder of a Catholic priest, we considered the admissibility of evidence of other acts of vandalism and assault and battery against the Catholic Church and its personnel. As in the present case, the defendant maintained that he did not commit the charged crime and that he had also been insane at the time of the offense. This Court ultimately concluded that the evidence was admissible because it revealed a motive for an otherwise apparently senseless shooting of the priest by demonstrating the defendant's deep-seated hatred of the Catholic Church. With regard to the state's alternative rationale *524 for introducing the evidence, that it tended to show the defendant's intent and knowledge which he had placed at issue by his dual insanity plea, we observed:
To the extent that the defendant's specific intent was put at issue by his plea of not guilty by reason of insanity, the commission of these other crimes was not relevant on the issue of legal insanity to show that the defendant knew the difference between right and wrong, La. R.S. 14:14. In support of the state's case against legal insanity, the defendant was not shown to have known the difference between right and wrong when he committed these other crimes (in fact, the indication is that his behavior was irrational)-that he committed these other crimes was simply not relevant to prove that, if he shot the priest, he did so with any knowledge that it was wrong.

Abercrombie, 375 So.2d at 1175.
However, Abercrombie does not compel a similar conclusion here because in the present case, there was evidence from which a rational trier of fact could infer that respondent knew the difference between right and wrong at the time he assaulted K.B. under circumstances similar to the sexual assault on his own daughter. According to K.B., respondent lured her to his house, pulled her inside as he locked the door behind her, and told her that if she screamed he would kill her. He then took her to his bedroom, stripped off her clothes, and began raping her and licking her "up and down," while she pleaded with him to let her up because she wanted to go home to her mother. Respondent replied, "No, if I let you go see your mom, your momma going to call the police.... If you holler, I'm going to take your body and throw it in the backyard."
A rational trier of fact could infer from K.B.'s testimony that respondent's conduct on that occasion showed an awareness that what he was doing was both morally wrong (hence his concern that she would tell her mother) and legally wrong (hence his concern that the mother would go to the police) and that he was therefore legally sane at the time he committed the offense.[5] *525 The incident with K.B. was therefore probative in the present case not only because it revealed respondent's sexual propensities for juvenile females (a prohibited purpose under Kennedy) but also because it revealed his capacity to understand the moral as well as legal culpability of his acts, despite (arguably) suffering from paranoid schizophrenia and moderate mental retardation, conditions which also persisted, and which by their very nature had to persist if the diagnosis were accurate, when he committed the charged crime against L.C. under similar circumstances. The incident with K.B. thus gave a fact finder a rational evidentiary basis for concluding that some degree of moral awareness, and not simply an awareness based on his previous confinement at hard labor that he might be punished, led respondent to bar access to his home before sexually assaulting his daughter and that he had therefore been legally sane at the time of the offense because he understood that his conduct was wrong.
Evidence inadmissible for one purpose may be admissible for another purpose. La.C.E. art. 105; State v. Nash, 475 So.2d 752, 756 (La.1985). The trial court therefore did not err in admitting evidence of the assault K.B., and as the fact finder at trial, the court had no duty to charge itself as to the limited admissibility of the evidence. State v. Aldridge, 450 So.2d 1057, 1059 (La.Ap. 1st Cir.1984) ("[A] judge in a bench trial is not required to give reasons in support of his verdict, nor is he even required to charge himself on the applicable law, since he is presumed to know it, unless one of the parties timely requests that he do so and provides him with the requested written charges."). The decision of the court of appeal is therefore reversed, respondent's conviction and sentence are reinstated, and this case is remanded to the district court for execution of sentence.
DECISION OF THE COURT OF APPEAL REVERSED; CONVICTION AND SENTENCE REINSTATED; CASE REMANDED.
TRAYLOR, KNOLL and WEIMER, JJ., concur and assign reasons.
KNOLL, J., concurring.
I concur in the result reached by the majority. I write separately to express my disagreement with State v. Kennedy, XXXX-XXXX (La.4/3/01), 803 So.2d 916. While I was a member of this court when Kennedy was decided, I did not participate in the Kennedy decision because I was recused. I agree with the conclusion reached by Justice Traylor's dissent in the Kennedy decision.
TRAYLOR, J., concurring.
I concur in the result reached in the majority decision. I believe, however, that evidence of the defendant's prior rape of a thirteen year old child should be admissible for the reasons set forth in my dissent in State v. Kennedy, 00-1554 (La.4/3/01), 803 So.2d 916. Kennedy should be overruled.
WEIMER, J., concurring.
The result reached by the majority that the evidence of the defendant's prior sexual misconduct is admissible, is correct. I concur because I agree with the conclusion reached by Justice Traylor in his dissent in State v. Kennedy, 00-1554 (La.4/3/01), 803 So.2d 916. I would overrule the majority opinion in Kennedy.
NOTES
[1] As indicated, this matter was remanded to the court of appeal for reconsideration in light of this court's decision in State v. Kennedy, 00-1554 (La.4/3/01), 803 So.2d 916. The court of appeal reluctantly applied Kennedy to reverse the conviction. In remanding, in this or other matters, it is not our intent to dictate a result. Nevertheless, given our disposition, in retrospect it is evident this court should have resolved the matter without a remand.
[2] In Kennedy, we observed that because aggravated rape is a general intent crime in which "the criminal intent necessary to sustain a conviction is established by the very doing of the proscribed acts," and because the defendant had "categorically denied the charge," evidence of the defendant's lustful disposition towards children was not admissible to prove his intent or motive, as the circumstances of the case "foreclose[d] any possibility, or at least no rational jury could entertain the possibility, that the defendant's penis accidentally found its way into his victim's vagina." Kennedy, 00-1554 at 11-12, 803 So.2d at 924.

At the close of the pre-trial hearing conducted on the admissibility of K.B.'s testimony, the state argued that evidence of the prior sexual assault was admissible, not to prove respondent's intent or motive in committing the charged crime as revealed by his lustful disposition towards children, but to show his system and pattern in preying sexually on 13-and 14-year old girls. The trial court ruled that the evidence was admissible because of the "similarities, the age of the victim, the style and the manner in which the event, the alleged rape supposedly have taken place." However, in Kennedy, we cautioned that unless the evidence is relevant to a material fact placed at issue, e.g., identity, proof of a pattern of conduct "is but another way of demonstrating that [the defendant] has the propensity to commit such crimes and that the act charged against him probably occurred...." Kennedy, 00-1554 at 14, 803 So.2d at 925. The court of appeal thus properly treated the issue as if the state had explicitly invoked lustful disposition as a rationale for introducing the evidence. However, as discussed in text, infra, respondent's pattern of conduct was relevant, not to a material element of the offense, but on the question of his sanity placed at issue by his dual insanity plea.
The analysis but not the result would change in this case under La.C.E. art. 412.2, which provides generally that in prosecution of a sexual offense involving a victim under the age of 17 years at the time of the offense, "evidence of the accused's commission of another sexual offense may be admissible and may be considered for its bearing on any matter to which it is relevant...." We decided Kennedy before the enactment of La.C.E. art. 412.2 by 2001 La. Acts 1130 and retroactive application of this provision to a case in which the defendant committed the charged sexual offense before the effective date of the statute remains an open question.
[3] Following his treatment at the forensic facility where he regained his capacity to understand the proceedings against him, the defendant returned to the Criminal District Court in Orleans Parish and entered a guilty plea to a reduced charge of forcible rape and a sentence of six years imprisonment at hard labor. The present offense occurred shortly after his release from custody on the previous conviction.
[4] The state presented countervailing evidence from Drs. Salcedo and Richoux, who testified that they found the defendant non-psychotic and almost certainly sane at the time of the offense, even while acknowledging a consistent history of diagnosis for significant mental disorders and for mental retardation. On the latter question, both doctors testified that the defendant was not, in fact, mentally retarded. In particular, Dr. Salcedo saw no need to administer an I.Q. test to the defendant because it was clear to him that defendant's I.Q. did not fall below 69, "which is where mild mental retardation begins."

Given the divergent medical opinion on the question of respondent's mental status and his sanity at the time of the offense, the court of appeal found that "[v]iewing all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that defendant failed to prove by a preponderance of the evidence that he was unable to distinguish between right and wrong at the time he raped his daughter." Morgan, 99-2685 at 23, 779 So.2d at 30.
[5] The distinction drawn by Dr. Zimmerman between an individual's comprehension of legal wrong and moral wrong touched on an ambiguity in Louisiana's law regarding the M'Naughten right/wrong test of legal insanity incorporated in La.R.S. 14:14. We discussed the distinction in Abercrombie and concluded that, at least until the legislature further refines the standard in La.R.S. 14:14, this state follows the "predominant practice in American jurisdictions" by permitting a jury "to find the accused sane if the accused knows it is `wrong' to commit the offense, without specifying that he must know it is either `legally' or `morally' wrong." Abercrombie, 375 So.2d at 1178; see 1 Wayne R. LaFave, Substantive Criminal Law, § 7.2(b), p. 538 (2nd ed. 2003)("In England, M'Naughten is now read as requiring that the defendant know that the act was legally wrong. In this country, however, the question of whether wrong means legally or morally wrong has not been clearly resolved. The issue has very seldom been raised; this part of the M'Naughten test is simply given to the jury without explanation.") (footnotes omitted). Many jurisdictions treat the distinction as one without a meaningful difference in terms of a defendant's culpability for his acts. See State v. Worlock, 117 N.J. 596, 569 A.2d 1314, 1322 (1990)("Because an act that is contrary to law will generally contravene societal morals, a defendant who claims that he or she lacked the capacity to comprehend either legal or moral wrong need not receive a charge distinguishing the two kinds of wrong."); State v. Crenshaw, 98 Wash.2d 789, 659 P.2d 488, 494 (1983)("The law is, for the most part, an expression of collective morality.... [S]ince by far the vast majority of cases in which insanity is pleaded as a defense to criminal prosecutions involves acts which are universally regarded as morally wicked as well as illegal, the hair-splitting distinction between legal and moral wrong need not be given much attention.")(internal quotation marks and citations omitted).