TERRI F. LOVE, Judge.
LWilliam J. Cox, a/k/a Billy Cox (“Mr. Cox”) appeals his convictions for eight (8) sex offenses committed against four juveniles in Plaquemines Parish. Mr. Cox alleges that the trial court erred in admitting evidence of other crimes, wrongs, and acts pursuant to La. C.E. art. 412.2. We find evidence of similar sex offenses under La. C.E. art. 412.2 is an exception to the general rule that evidence of other bad acts is not admissible to prove the character of a person and that his actions for which he stands trial were in conformity therewith. Further, we find the trial court’s ruling admitting the introduction of the evidence was not an abuse of discretion given its probative value was not substantially outweighed by the danger of unfair prejudice. Therefore, we affirm Mr. Cox’s convictions and sentences.

PROCEDURAL HISTORY

In June 2014, Mr. Cox was charged by an amended bill of information to twelve counts of sex offenses including: oral sexual battery (La. R.S. 14:43.3) in Counts 1, 2, 3; sexual battery (La. ’ R.S. 14.43.1) in Count 4; aggravated incest (now repealed La. R.S. 14:78.1) in Counts 5 and 8; indecent behavior with a juvenile | a(La. R.S. 14:81) in Counts 6 and 7; and, molestation of a juvenile (14.81.2) in Counts 9, 10,-11, and 12. Following a jury trial in August 2014, Mr. Cox was found not guilty of Counts. 1 and 5; guilty as charged as to Counts 2, 3, 4, 6, 7, 10, 11, 12; and guilty of indecent behavior with a juvenile, the lesser responsive verdict, on Count 9.
Mr. Cox subsequently filed a motion for post-verdict judgment of acquittal and a motion for new trial. The trial court granted Mr. Cox’s motion for post-verdict judgment of acquittal as to counts 4 and 12, denied it as to all other counts, and denied his motion for new trial. Thereafter, the trial court sentenced Mr. Cox to forty years at hard labor. Mr. Cox received: five years at hard, labor for Counts 6, 7, and 9 relative to.indecent behavior with a juvenile; seven years at hard labor for Counts 2 and 3 relative to oral sexual battery; ten years at hard labor for Counts 10 and 11 relative to molestation of a juvenile; and fifteen years for Count 8 relative to aggravated incest. The trial court ordered that the sentences in Counts 2, 6, and 10 run concurrently with each other and consecutively to the sentences in Counts 8 and 9; the sentences in Counts 8 and 9 wére ordered to run consecutively to each other; the sentences in Counts 3, 7, and 11 were ordered to rim concurrently with each other and consecutively to the sentences in Count 8 and Count 9. The trial court also denied Mr. Cox’s oral and written motions for reconsideration of sentence, objecting to the consecutive nature of the sentences. The appeal presently before this Court followed.

J^FACTUAL BACKGROUND

Mr. Cox was charged with, and convicted of sexually abusing four juveniles[1] in Plaquemines Parish, including: oral sexual battery and indecent behavior with a juvenile as to sisters A.G. and C.B.; aggravated incest as to M.P.; indecent behavior *134 with a juvenile as to Mr. Cox’s biological daughter C.C.; and molestation of a juvenile as to A.G., C.B., and M.P. Further, M.S., a fifth alleged victim, provided testimony at trial relating to uncharged and unadjudicated offenses of sexual abuse by Mr. Cox that occurred in St. Bernard Parish.
The allegation of sexual molestation stem from Mr. Cox’s contact with the juvenile victims during Mr. Cox’s marriage to F.P. in 1990 or 1991 and P.B. in 1993.
Mr. Cox began a relationship with F.P. in and around 1984 and moved in with F.P. and her children the same year. F.P., the mother[2] of victims A.G. and C.B., testified at trial that that when she and Mr. Cox began their relationship, A.G. was four years old, and C.B. was one year old. She and Mr. Cox married in 1990 or 1991; however, the marriage dissolved in 1993.
Victim A.G., born in 1980, testified at trial that she was almost six years old when Mr. Cox began molesting her while the family was living in Georgia. She stated that the abuse occurred almost daily and that he threatened to kill her if she told anyone. She described being “petrified” at the time. She testified that the |4molestation began with Mr. Cox touching her, and as she grew older, the abuse progressed to him performing oral sex upon her and to him forcing her to perform oral sex upon him. She stated that when they would visit her aunt in Buras, Louisiana, located in Plaquemines Parish, Mr. Cox would take her with him when he drove to the store. Mr. Cox would then drive down a secluded dirt road and molest her, including forcing her to perform oral sex. She first told someone about the abuse when she and her family evacuated during Hurricane Andrew to her grandmother’s house.[3] She told her aunt about the molestation; and then she and her sister C.B. told their mother, grandmother, and another aunt, who were all present at the time.
C.B., born in 1983, also testified at trial. She stated that Mr. Cox began molesting her when she was three or four years old. She testified that the first time was while they were living in Georgia. She described how Mr. Cox took her into the bathroom, pulled down her underwear, and orally touched her. She stated that he never had her touch his penis. She also testified that while they were living in Houma, Louisiana, Mr. Cox tried to penetrate her anally; however, when she screamed, he stopped. She stated that the abuse occurred regularly, about every other day. She testified that she was afraid to tell anyone because he threatened to kill her. Given that Mr. Cox abused her mother, C.B. believed his threats. She described that while living in Georgia, she was afraid to urinate in the morning because the bathroom was next to the master bedroom. She often urinated on the|fifloor of her bedroom and blamed it on the dog. Like her sister, C.B. did not tell anyone about the molestation until they were at her grandmother’s house during their evacuation for Hurricane Andrew. She stated that the same molestation occurred in Plaquemines Parish when they would stay at her aunt’s house in Buras, Louisiana.
A.G. and C.B.’s mother, F.P., testified at trial that it was not until they evacuated for Hurricane Andrew that the girls revealed “what happened.” When they returned to Gray, Louisiana, F.P. confronted Mr. Cox with the allegations over the telephone while he was at work. Mr. Cox *135 denied any wrongdoing. F.P. stated she packed her belongings, and she and her children moved out of the residence she shared with Mr. Cox. In 1992, Mr. Cox was sent to Africa on a work assignment. While he was abroad, F.P. began an extramarital relationship. When Mr. Cox returned stateside, he filed for divorce, alleging adultery. F.P. acknowledged on cross-examination that she never informed the court handling the divorce proceedings about her daughters’ allegations of abuse. However, on redirect examination, F.P. confirmed that there were no custody issues between her and Mr. Cox as he was not their biological father. She also admitted that she never took her daughters to the police, to a hospital, or to therapy after they informed her of the abuse. In 1993, Mr. Cox and F.P. were divorced.
In December of the same year, Mr. Cox married P.B., who had two daughters from a previous marriage, M.P. and M.S. In addition to testimony from M.S. and M.P., their father, R.P., testified at trial.
| fiM.P., born in 1984, testified that she was about nine or ten years old when her mother married Mr. Cox. M.P. related three instances when Mr. Cox touched her genital area through her clothing: once when the family was living in St. Bernard Parish; once at the Louisiana Superdome when she was sitting on his lap at a concert; and once when the family was living in Plaquemines Parish. As for the latter incident, M.P. testified that Mr. Cox touched her vagina underneath her clothing and underwear. She stated that she believed this incident occurred after her mother and Mr. Cox divorced. She explained that even after the divorce, Mr. Cox would come to visit C.C., his biological daughter. M.P. also testified that she did not report the incidents.
M.P.’s younger sister, M.S., born in 1993 also testified at trial. She stated that before her mother married Mr. Cox, he molested her when he would babysit them while their mother was at work. She recalled watching television while sitting on his lap and Mr. Cox touching and rubbing her vagina underneath her clothes with his hand. She testified that it was not until she moved in with her father R.P. that she told anyone about the abuse. M.S. also recalled going to the hospital, but did not recall talking to the police detective.
M.S. confirmed that Mr. Cox never molested or abused her in Plaquemines Parish. She stated that the entire time Mr. Cox was .dating her mother, as well as when he lived with them, they resided in St. Bernard Parish. She stated that she did not talk to her sister M.P. about the molestation until recently; however, she 17would ask her half-sister C.C. about it when she would visit, but C.C. told her Mr. Cox never molested her.
R.P. testified that he was the father of four children including victims M.P. and M.S. He stated that following his divorce from P.B. in 1991, P.B. married Mr. Cox and his four children resided with them because he was serving a prison sentence for a marijuana offense. R.P. testified that after his release from prison he went to visit his children, and soon after all of his. children except M.P. came to live with him.
R.P. recalled that one night while watching television with M.S., the term “carnal knowledge” was mentioned on the news. M.S. was approximately eight and one-half years old at the time, and she asked him what the term meant. R.P. explained to M.S. that it meant “when someone touched you where they were not supposed to.” His daughter’s response was, “Oh, like Billy.” R.P. explained to the jury that when he asked his daughter what she meant, she ran to her bedroom and locked the door.
*136 R.P. testified that he called Child Services and made an official complaint. M.S. underwent a physical examination that returned no abnormal findings. R.P. stated that an investigator from the St. Bernard Sheriffs Office explained to him that it was her belief that M.S. claimed Mr. Cox molested her because she wanted her parents back together. R.P. testified that the investigator then told him the case was closed.
[ 8Mr. Cox’s biological daughter, C.C., born in 1994, testified at trial, stating that she was also molested by her father when she was a child. Consequently, she described having difficulty coping as an adult, and at her aunt’s urging she sought counseling. C.C. stated that the person with whom she sought treatment asked her if she wanted to press charges against her father, and she said she did. Subsequently, in July 2013, C.C. talked to detectives from the Plaquemines Parish Sheriffs Office (“PPSO”). She reported that her father Mr. Cox molested her throughout her early childhood, from about age four to age six. She stated that the abuse completely stopped after Hurricane Katrina when she was approximately eleven years old. At trial, C.C. did not recall talking to her half-sister M.S. about the molestation, and she did not know A.G. or C.B. until the trial began.
PPSO Detective Aaron Verrette (“Detective Verrette”) testified that his investigation of Mr. Cox began when his daughter C.C. presented at the sheriffs office and reported that Mr. Cox molested her. Detective Verrette’s testimony corroborated C.C.’s account of the molestation. The detective also stated that he interviewed M.S. and M.P., C.C.’s half-sisters, who also reported abuse. Detective Verrette’s testimony recounted the same three incidents that M.P. testified to at trial, and that M.S. recalled an incident occurring in St. Bernard Parish.
Detective Verrette also interviewed victims C.B. and A.G. He testified that he visited A.G.’s residence in Houma, Louisiana, and explained the purpose of his visit. He stated that A.G. immediately began crying and said his investigation must involve Mr. Cox. The detective’s testimony recounted A.G.’s testimony regarding 1 athe abuse in Georgia, Gray, Louisiana, and in Plaquemines Parish. Detective Verrette then interviewed C.B. He stated that as with her sister, C.B. knew immediately that the sex investigation involved Mr. Cox. She then detailed to him multiple incidents of abuse in Georgia, Gray, Louisiana, and in Plaquemines Parish.
Additionally, the detective interviewed R.P., the father of M.S. and M.P., but he was unable to verify that R.P. ever made a complaint to the St. Bernard Sheriffs Office regarding Mr. Cox’s alleged molestation of his daughters. Nevertheless, the detective acknowledged that in his experience he has seen instances where incidents are reported, but the police decide not to pursue it. Detective Verrette confirmed that he was unable to locate any police reports or medical records relating to the allegations made by the four victims. He further noted that the only incident of sexual abuse M.S. reported to him occurred in St. Bernard Parish.
Furthermore, Mr. Cox testified at trial. His testimony relative to the timeframe of his relationships with the mothers of the four victims corroborated the testimony of the other witnesses. He stated that he was arrested at his home by Detective Verrette and denied ever committing any of the acts testified to by the four victims.

ERRORS PATENT

A review of the record reveals no patent errors.

*137
\ STANDARD OF REVIEW

In his sole assignment of error, Mr. Cox claims the trial court erred by admitting evidence of child molestation he allegedly committed besides those acts with which he was charged.
A trial court’s ruling admitting/permitting the introduction of evidence carries with it an implicit conclusion.that the trial court found the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, as per La. C.E. art. 403. State v. Magee, 11-0574, p. 49, fn. 37 (La.9/28/12), 103 So.3d 285, 320, fn. 37 (“Although the district court did not specifically rule on the admissibility of the statements under La. C.E. art. 403 (perhaps because it was not asked to), the court admitted the statements, implicitly finding that their probative value substantially outweighed the danger of ‘unfair prejudice, confusion of the issues, or misleading the jury.’ La. C.E. art. 403.”).
A trial court is vested with broad discretion in ruling on the admissibility of evidence, and this court will not disturb such a ruling absent a clear abuse of discretion. State v. Berniard, 14-0341, p. 15 (La.App. 4 Cir. 3/4/15), 163 So.3d 71, 90 (citing State v. Bell, 05-0808, p. 12 (La.App. 4 Cir. 12/6/06), 947 So.2d 774, 781).

ADMISSION OFARTICLE 412.2 EVIDENCE

The State timely filed a notice of intent to introduce evidence of similar crimes, wrongs, or acts by Mr. Cox involving sexually assaultive behavior or acts indicating his lustful disposition toward children, pur suant to La. C.E. art. 412.2(A), which states in pertinent part,
When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time ofj^the offense, evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children' may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.[4]
Subsequently, Mr. Cox filed a motion to exclude Article 412.2 evidence on several grounds, including that the probative value of the evidence was outweighed by its prejudicial effect under the balancing test of La. C.E. art. 403. The’trial court denied the motion.
La. C.E. art. 412.2 is an exception to the well-settled general rule that “evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.” La. C.E. art. 404(B)(1); See also State v. Prieur, 277 So.2d 126 (La.1973) (limiting introduction of other crimes evidence). Additionally, La. C.E. art. 412.2 expressly conditions the admissibility of evidence to the balancing test of La. C.E. art. 403, which provides, in pertinent part, that “[ajlthough relevant, evidence may be excluded if its probative *138 value is substantially outweighed by the danger of unfair prejudice.... ”
All inculpatory evidence is “prejudicial” to a defendant, especially when it is “probative” to a high degree. State v. Rose, 06-0402, p. 13 (La.2/22/07), 949 So.2d 1236, 1244 (citing State v. Germain, 433 So.2d 110, 118 (La.1983)). The balancing test of La. C.E. art. 403 limits the introduction of probative evidence of h2prior misconduct “only when it is unduly and unfairly prejudicial.” Rose, supra. See also Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997) (“The term ‘unfair prejudice,’ as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.”). The greater the degree of similarity of the offenses the more the evidence enhances the probability that the same person was the perpetrator, and hence the greater the probative value of the evidence, which ultimately is to be weighed against its prejudicial effect. Rose, 06-0402, p. 14, 949. So.2d at 1244.
In the present case, Mr. Cox complains of testimony from three of the four victims, M.P., A.G., and C.B., relating to his sexual abuse of them outside of Plaquemines Parish. Mr. Cox also avers that the trial court erred by admitting the testimony of M.S., whom Mr. Cox was not charged with abusing, because the alleged abuse occurred in St. Bernard Parish.
Even still, the testimony Mr. Cox complains of was relevant to the issues of Mr. Cox’s intent, plan, knowledge, and absence of mistake or accident. Specifically, the testimony was relevant to those issues as it relates to the similar acts of molestation for which he was being tried for committing in Plaquemines Parish, involving A.G., C.B., and M.P. It cannot be said that the trial court abused its discretion in concluding that the probative value of the complained of evidence was substantially outweighed by the danger of unfair prejudice. The record furnishes no basis to conclude that there was a danger the jury would be lured by the evidence of the uncharged offenses occurring outside Plaquemines Parish into convicting Mr. Cox based on anything less than a reasonable doubt as to the | iaoffenses alleged to have been committed in Plaquemines Parish. Therefore, we find no merit to this argument.
Mr. Cox also avers that the State failed to prove by “clear and convincing evidence” that the uncharged crimes occurred. For purposes of admissibility under La. C.E. art. 412.2, however, the State only has the burden of proving the other wrongs, crimes or acts by a preponderance of the evidence. See State v. Scoggins, 10-0869, p. 11-12 (La.App. 4 Cir. 6/17/11), 70 So.3d 145, 152-53.
The State met its burden of proof in the present case for the admissibility of evidence relating to the uncharged offenses. Although, we note that the State also met its burden by the clear and convincing standard, requiring proof by more than a preponderance but less than beyond a reasonable doubt. In re Free, 14-1828, p. 18 (La.12/9/14), 158 So.3d 771, 782 (establishing the level of proof required under the clear and convincing standard). Mr. Cox does not question the sufficiency of the evidence as to any count for which he was convicted. The quality and weight of the evidence presented by the State was the same for the uncharged offenses as it was for the offenses for which the jury found him guilty beyond a reasonable doubt. We find this argument lacks merit.
Lastly, Mr. Cox avers that the application of La. C.E. 412.2 to permit the *139 introduction of evidence as to the uncharged acts was prohibited by ex post facto provisions of the Louisiana and United States Constitutions. Specifically, Mr. Cox notes that La. C.E. art. 412.2 was not enacted until 2001, which was after the acts, excluding those involving C.C., were allegedly perpetrated. The record, however, does not reflect that Mr. Cox raised the ex post facto issue in the trial court, including in his written motion in limine.
| uEven assuming the issue was preserved for appellate review, there is no merit to Mr. Cox’s argument. Art. I, § 10 of the United States Constitution and La. Const, art. I, § 23 prohibit ex post facto application of the criminal law by the State. Smith v. State, 10-1140, p. 15 (La.1/24/12), 84 So.3d 487, 497. When determining whether an ex post facto violation exists, the analysis should focus on whether the new law redefines criminal conduct or increases the penalty by which the conduct is punished, and not whether the defendant has simply been disadvantaged. State ex rel. Olivieri v. State, 00-0172, p. 14-16 (La.2/21/01), 779 So.2d 735, 744.
Further, the United States Supreme Court has identified four categories of law that violate the ex post facto prohibition: (1) any law that makes an action criminal that was innocent when done before the passing of the law; (2) any law that aggravates a crime or makes it greater than it was when committed; (3) any law that changes the punishment and inflicts greater punishment than the law provided when the crime was committed; and (4) any law that alters the legal rules of evidence and requires less or different testimony than was required at the time the offense was committed, in order to obtain a conviction. Rogers v. Tennessee, 532 U.S. 451, 456, 121 S.Ct. 1693, 1697, 149 L.Ed.2d 697 (2001) (citing Calder v. Bull, 3 Dall. 386, 390,1 L.Ed. 648 (1798)).
In a footnote in its per curiam decision in State v. Morgan, 02-3196, p. 2 fn. 2 (La.1/21/04), 863 So.2d 520, 521-22, fn. 2, the Louisiana Supreme Court noted that the retroactive applicability of La. C.E. art. 412.2 “remains an open question.”
In State v. Willis, 05-218, p. 22 (La.App. 3 Cir. 11/2/05), 915 So.2d 365, 383, the Third Circuit held that the retroactive application of La. C.E. art. 412.2 did not constitute an ex post facto violation. The court found that the provision did not | t salter the amount of proof required in a defendant’s case, but that it merely pertained to the type of evidence that may be introduced. Citing Willis, the Fifth Circuit Court of Appeal ruled similarly in State v. Greene, 06-667, p. 7-8 (La.App. 5 Cir. 1/30/07), 951 So.2d 1226, 1231-32.
La. C.E. art. 412.2 expanded the type of evidence that may be introduced in the prosecution of certain sex offenses without altering the quantum of evidence required for a conviction. Prior to provision’s enactment, the complained of testimony would not be admissible to prove Mr. Cox’s character in order to show he acted in conformity therewith under La. C.E. art. 404(B). However, Article 412.2 does not redefine criminal conduct or increase the penalty by which it is punished. More specifically, La. C.E. art. 412.2 does not make an action criminal that was innocent when done before its effective date, nor does it aggravate a crime or make it greater than it was when committed. The law does not change the punishment for any offense in this case. Nor does it alter the legal rules of evidence to require “less or different testimony than was required at the time the offense was committed, in order to obtain a conviction.” Rogers, 532 U.S. at 456, 121 S.Ct. 1697. Consequently, the Louisiana and United States constitu *140 tional ex post facto prohibitions would not bar the application of La. C.E. art. 412.2 in the present .case. Therefore, we find no merit to Mr. Cox’s assignment of error.

DECREE

For the foregoing reasons, we find the trial court did not abuse its discretion by-admitting testimony relating , to uncharged acts of molestation occurring outside Plaquemines Parish. Accordingly, we affirm Mr. Cox’s convictions and sentences.
AFFIRMED
BONIN, J., concurs with reasons.

. Due to the nature of the offenses, the victims, their mothers, and the father of victims M.P. and M.S. are referred herein by their initials pursuant to Rules 5-1 and 5-2 of the Uniform Rules — Courts of Appeal.

. F.P. has one son, K.P., however, he is not involved in the present appeal.

. We take judicial notice that Hurricane Andrew made landfall in August of 1992.

. La. C.E. art. 412.2(A), from the effective date of its enactment, August 15, 2001, until amendment to its present form by Acts 2004, No. 465, § 1,' eff. August 15, 2004, stated:
A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute .a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another sexual offense may be admissible and may be considered for its bearing on' any matter to which it is relevant subject to the balancing test provided in Article 403.